case today. Our nametags are, as you can see, but let me introduce ourselves a bit more personally. To my right is Judge Priscilla Owen. She resides in Houston, Austin, I'm sorry, but she travels here. She does quite often to hear cases. And on my left is Judge Jack who is a circuit judge and resides here in New Orleans. And I'm James Dennis and I reside here in New Orleans. I'll be presiding this morning not because of any distinction on my part, but I just happen to be the senior member, senior active member on the panel today. So I will call the first case today, which is United States of America v. Jeffrey Antoine Johnson. And we'll hear first from Mr. George Lucas, Attorney Commissioner Antoine Johnson. Thank you. Thank you, sir. May it please the court, my name is George Lucas. I'm an attorney with the Federal Public Defender's Office in Oxford, Mississippi. And I'm here today on behalf of Mr. Jerry Antoine Johnson. Mr. Johnson was initially indicted for the crime of possessing a firearm by someone who had been previously convicted of a misdemeanor crime of domestic violence. After a period of negotiation pursuant to a plea agreement, Mr. Johnson entered a plea of guilty to that charge, and a date was set for sentencing. A pre-sentence report was prepared by the probation office pursuant to Rule 32 of the Federal Rules of Criminal Procedure. And on October the 30th, that pre-sentence report was given to me as his attorney. You were trial counsel? I was trial counsel. During the month following the receipt of that pre-sentence report, Mr. Johnson and I reviewed that report, reviewed the factual and the legal conclusions in there, determined that we would not object to any of the matters contained within, and informed probation of that. And on November the 30th, a final revised PSI was provided to the court. On December the 11th, we went for sentencing before the district court judge. And during the sentencing, it became apparent to me that the district court judge was reading from a document that I had never seen. Several statements were made, such as that the defendant, that the community that he lived in had to, became so fearful of him that they had to ask for federal assistance to get him out of the community, that he had intimidated numerous witnesses in the past, that he was a known shooter and public enemy number three in the Clarksdale area. Those factual allegations had never been, I'd never heard those, I'd never seen them either in discovery or in the pre-sentence report, and therefore I asked the judge, judge where are you, what are you reading from? I've never seen that document. Or have I ever seen that document? And the judge looked at the document and said, well I just got it from probation, no you probably haven't seen it, and went on with his sentence. At the time that he initially, right before he awarded sentence in the case, stated what the sentence was going to be for the defendant, he reiterated, excuse me, he reiterated the facts that he had read out of this justification section of the confidential sentencing memorandum. He then awarded the defendant a sentence of 72 months, substantially higher than the guideline range of 46 to 57 months that we were expected when we went into the, into the uh, into the sentencing. We asked, we objected to that sentence as being unreasonable and asked that this document be part of, made part of the record. The judge did so, and it is from this document that we appealed. Did you ask for additional time to respond to that document? I did not. Or after the hearing, ask for reconsideration, say? I did not, your honor, and I understand that that might have been the better practice, and we recognize that we are asking this court to review this, this, this issue under a standard of review because we believe it is, it is a constitutional question and a question of statutory interpretation that this court should normally review under de novo. I recognize that I could have better objected to this document at the time of sentencing. If I did not, if the court should find that I did not object to it specifically enough, then the court would look at a plain error standard review. We submit that even under the plain error standard review, which calls at first there must be an error or defect, the use of a, of a secret document, the legal area must be clear or obvious, and we certainly think that that would be clear and obvious under Rule 32 using a secret document. It must have affected the appellant's substantial rights, and clearly it did because the and that it must seriously affect the fairness, integrity, or public reputation of judicial proceedings. We submit that it does in this proceeding and in every other proceeding. Due process of the Fifth Amendment right to due process requires at a minimum that a defendant have a, have an Well, for example, I mean, it seems like most of these facts were contained or at least discernible from the PSR. All of the different things that he'd been indicted for or charged with and wasn't tried, it was because witnesses didn't show up or witnesses decided not to prosecute. There were several cases in which the witnesses did not show up. And that was all in the PSR. Certainly that was within the PSR, but there was nothing in the PSR that said that he intimidated numerous witnesses. The PSI just said that witnesses didn't show up. Well, I thought the judge actually asked the defendant about that. He said, I notice here that you were charged with this, this, and this, and that you weren't tried because the witnesses didn't show up. Wasn't there some sort of colloquy about that? The judge did ask, or did say something about that citing directly to this document. But the PSR had those facts, not the, not intimidation. That's correct. He used the word charged with various crimes and the witnesses at the last minute either wouldn't testify or withdrew complaints or. That is correct. And did the judge ask the defendant about that at sentencing? The judge stated that and I objected to that, to that statement or I said that the judge read it directly where there were likely intimidated numerous witnesses in the past. And I believe I said, your honor, I don't, I don't believe there was but a couple of occasions. Do you have evidence that you would now offer to show that they didn't, there was no intimidation? No, your honor, I do not have any direct evidence. So if you go back and have another hearing and you have all these facts, what different evidence would you put in front of the judge the second time around? I might be able to, to, to engender evidence that there was not the evidence in that he was not considered a known shooter or public enemy number three. Well, the known shooter piece, I thought the PSR listed a bunch of instances where he had shot, shot at people. There were several times that he, he had been in possession of a firearm. But that was in the PSR, that he actually shot at people was in the PSR witness. Is this to exhibit the entire document that you objected to at, at the sentencing? No, your honor, there's about another half a page that is part of the record. I just wanted this for to have the front page so that I could show what I'm objecting to is not the bottom half of that document. I'm sorry, is not the top half of that document, but rather the bottom half of that document. We're, we're not objecting to the, to the court getting a recommendation from the probation office. We are, we are objecting to the justification that is contained within that. Just to be clear, you're not saying that this would change the guideline sentencing range? It certainly would not change the guideline sentencing range. No, your honor, it would remain at the 46 to 57 months. How much time did your client receive in sentencing? He received 72 months, your honor. And you, you contend he would not have received. That's correct, your honor. That much if some of this information. That's correct, your honor. Had not been brought into the, to the judge's attention. That's right. And of course. What part of it's untrue that if we went back, if you went back and had a second sentencing hearing, what pieces of information in this are untrue so that the outcome would be different? Your honor, I don't know. I don't know whether I could find evidence that he was not considered public number three in the Clarksdale area. I don't know whether I could, I could find evidence about this numerous intimidation or intimidation of numerous witnesses. I haven't had the opportunity because we haven't been, we weren't confronted with these allegations until the time of sentencing. But I believe that we could probably engender some type of defense to these. If we had the opportunity. Now, Mr. Lucas, was this the first time you had encountered one of these confidential memos? Your honor, I've been practicing law since 1987. Nothing but criminal defense work since 1995. I have heard about them. I've been vaguely thought that they were there. But this is the first one that I ever actually saw. But it's not like this was unique. They're done with some regularity. I suppose in every case, your honor. But under rule 32, it tells us, rule 32 tells us that it should contain, the pre-sentence report should contain any other information that the court requires, including information relevant to the facts under 18 U.S.C. section 3553. This should have been in the pre-sentence report. If it had been in the pre-sentence report, we would have had an opportunity to be prepared to respond to it in sentence. We're not objecting, saying the probation officer can't say these things, but he should have said them in the pre-sentence report, which we had an opportunity to review and to discuss and we would have had an opportunity. What relief are you seeking? I'm sorry, your honor. What relief are you seeking? In this case, we're asking for a remand for sentencing without taking those matters into consideration. You want us to vacate the sentence? Yes, your honor. And remand it back to the district court? Yes, your honor. To take up the sentencing again? Yes, your honor. Without this information? Either without this information or with... Or giving you an opportunity to rebut it? Or giving us an opportunity to rebut it, your honor. In this case, that is what we're asking for. Prospectively, we are asking this court to order that either the justification section not be included in the pre-sentence report, I mean in the sentencing recommendation, or it be given to defense counsel so that we will have the opportunity to review it. What we're asking for is not unprecedented. The Seventh Circuit... Okay, even if we were to say going forward, this is a bad practice and district court should not do this, how do we meet either the harmful error piece of de novo review or the plain error standard? The fourth prong, third or fourth prong of plain error review. I mean, I'm not hearing anything that says this isn't true. And next time we'll present evidence and show the judge this was not true. He didn't shoot at anybody. He didn't intimidate witnesses. I mean, I clearly can't make that representation to the court because I have not researched these allegations. But as the court said in a death penalty case, U.S. v. Garner, the Supreme Court said the due process requires disclosure of all facts on which the probation officer's sentencing recommendation relies. And in the Seventh Circuit, in U.S. v. Patterson, they talk about Rule 32, the local Rule 32 for the Seventh Circuit, which states the recommendation section shall not include any factual information not already contained in the other sections of the report. And we're asking for a ruling to that effect. So that not only in this case, but in cases to come, the defendants will have the opportunity to review whatever allegations they are going to have to face when they stand before the court at sentencing. Judge Dennis, you may recall a number of years ago, sat on a panel in the United States v. Pendleton. And Pendleton was a similar case in which the pre-sentence report, or the sentencing recommendation, had been inadvertently disclosed to the defendant who had it for about two weeks before the time of sentencing. And in that case, it was discussed how important it was and that the defendant, in that case, had the actual opportunity to prepare and to rebut those facts or to discuss those facts at the time of sentencing. In this case, we did not. We never were disclosed. We never saw that document until substantially after the sentencing. What do you do about the provision in 32E3 about the district court directing the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence? That is this section right here, Your Honor. We do not object to that being non-disclosed. That is the recommendation. The top half of this document is the recommendation. The bottom half is the justification. We do object to that not being disclosed. Well, how do you get around 32E3? 32E3 states that the recommendation shall not be disclosed. Just the recommendation. It says nothing about a justification section. And in fact, 32D2G says any information that the court requires, including information relevant to the factors under 18 U.S.C. 3553. Is this a standard government form? Does it always have justification section on it? This is the only one I have ever seen in my life. I do not know whether they normally have it or not. I believe it to be a standard, not a government form, but a standard probation form, things prepared by probation. But never having seen any other recommendation, I can't answer that. It appears that my time is up. I will have reserved five minutes for rebuttal. Thank you. Thank you, Mr. Speaks. Mr. Wiggins? Yes, Your Honor. May it please the court? Yes, sir. Jamil Wiggins on behalf of the government. Your Honor, the government is asking this court to affirm the sentence imposed by the district court in this case. Our position is that there were no constitutional violations with respect to the court's consideration of the Rule 32 confidential sentencing recommendation. Our argument is based on three main factors that... Well, it doesn't have to be a constitutional violation, does it? No, Your Honor, it doesn't. With respect to our position on this matter, the most important issue is that there wasn't a timely objection at the sentencing. And that's evident from the record, and I'll come back to that shortly. All right, let's spot you. Let's assume we're under plain error review. We've gotten some decisions recently from the U.S. Supreme Court about plain error, and it's not that much different from DeNovo these days. So let's assume, let's spot you that it's plain error. So where are you there? Well, moving forward from the consideration of whether or not plain error applies, that would leave us with the appellant's argument failing each one of those prongs under plain error review. It's our position that there was no error by the district judge in considering this document. Where was there evidence in the PSR that this defendant had intimidated witnesses? Specifically, Your Honor, bear with me. There was a number of citations in Appley's brief, specifically on page 22. With respect to the record, I made reference in the brief to pages approximately 120 through 138 of the record, and that encompasses the criminal history section of the PSR. Does it reflect that he intimidated witnesses? It doesn't actually use the word intimidation, Your Honor, but our position was that this entire recommendation that was submitted by probation was a summary of essentially what was contained in the PSR. Well, the PSR listed a lot of charges that were dropped. It listed witnesses, complaining witnesses, and it did say in some instances that they wouldn't show up at trial and they withdrew the complaint. But it never drew the inference or stated that this witness intimidated those people, this defendant intimidated those witnesses, did it? I would argue, Your Honor, that there were specific instances where, for example, on page 138 of the record, that describes, it's actually paragraph 86 of the PSR, it describes the conduct that was alleged in count two of the superseding indictment in this instant case. There was a line that stated, on April 8th of 2016, the defendant took $100 in cash from a victim by pointing a handgun at him. Later, the same section of the PSR states that both victims would later sign documents stating that they no longer wish to pursue charges against the defendant. The PSR also made reference to the fact that there was no reasonable justification as to why victims repeatedly refused to go forward with charges against this defendant. So either it's a coincidence, Your Honor, or we're left to use our deductive reasoning and make a reasonable conclusion that there must have been some degree of witness intimidation involved in that instance. And with respect to the actual confidential sentencing recommendation, I'm not convinced that it actually asserts a fact in that respect. It says that the defendant likely intimidated numerous witnesses. So to assume that as a factual assertion, I think the word likely actually takes it out of the realm of being a fact, but more of an opinion regarding over 30 pages of criminal history that was attributable to this defendant. With respect to, again, the government's position with the first prong of the plain error review, it's our position that there was no error. There was an exchange in the record on pages 107 to 110 between the court and defense counsel, where the court was reading from this document, defense counsel interjecting and saying, Your Honor, is that a document that we've seen? The court responded, no, I just got this from probation. And defense counsel said, Thank you, Your Honor. It's the government's position that that was the point in which an objection should have been lodged, but it wasn't. So in that respect, defense counsel was reasonably put on notice that there was information that he hadn't actually reviewed with respect to the sentencing. So at that point, there either should have been an objection or a motion for a brief continuance, either for a few minutes to review the document or a few days or however long it would take a defense counsel to feel comfortable with the information in that report. With respect to the error being clear and obvious, I submit to this court that by virtue of the fact that we're reasonably debating over whether or not the information in this report was factual would cause the appellant's argument to fail in that regard. With respect to his assertion that there were secret facts that the defendant or the appellant was referred to as public enemy number three and he was a known shooter, I refer to the sentencing recommendation after the sentence where it states that the defendant was public enemy number three in the Clarksdale area. The next sentence says the defendant is a known gang member and is a documented participant in at least two shootings. So again, I think all this information can reasonably be interpreted to have just been based on the information that was disclosed in the PSR. As counsel opposite pointed out earlier, there was no objection lodged to the PSR at any point. And again, it's the government's position that they were reasonably on notice that the court was considering this defendant's violent history. With respect to the court actually imposing sentence, page 109 of the record details specifically what the court said. I quote, the court is of the opinion that these pages of criminal charges and evidence of intimidation of witnesses that the criminal charges, the history does not adequately reflect the seriousness of the record, I'm quoting from the court here, and of the defendant's conduct. What evidence of intimidation of witnesses were there evidence? Specific evidence, there was no evidence presented at the sentencing hearing with respect to a witness testifying.  that he was relying on evidence of intimidation of witnesses. Yes, and that was what was disclosed in the pre-sentence report. So that was a document that... So that's what I'm asking, what evidence of PSR was the judge relying on? Okay, let me get my citation. Again, pointing to the record, pages 120 through 138 specifically, and the court affair with me here. I thought you said a while ago that there was no direct evidence that you could just draw that inference. If I'm not mistaken, I said that there were no specific instances where the word intimidation was used, but based on the narrative from each one of those criminal history explanations or instances, it can reasonably be interpreted that there was a degree of intimidation used with respect to the witnesses refusing to show up after having been assaulted or robbed at gunpoint by this defendant. So they were assaulted or robbed at gunpoint after they had become witnesses? No, Your Honor, it's the government's position that during the act of this defendant holding people at gunpoint and shooting at them and participating in drive-bys, they became witnesses to his criminal conduct. And from that point forward, they refused to cooperate with law enforcement. And we don't know specifically for what reason. We obviously can't speak on behalf of those individuals, but if there's a pattern as evidenced by his criminal history, it's our position that that would indicate that it's more likely than not that there was a degree of witness intimidation occurring in each one of these instances where charges mysteriously were dropped. So that's the inference that we're submitting that the court made in reviewing the documentation and analyzing this defendant's criminal history history and characteristics with respect to over 30 pages of criminal history in his PSR. Your Honor, Counsel Officer also made a statement with respect to them expecting a guideline sentence. As the court is now aware, the guideline range was 46 to 57 months. However, there are two specific places in the PSR where probation specifically included language, and I'll quote, that the court may wish to consider an upward variance to ensure the sentence reflects the nature and scope and circumstances of the offense, and I won't read that entire passage, but that's page 146 from the record, and that's the first, that's the second paragraph, paragraph 125 of the PSR. So Counsel Officer was aware that the court was at least considering an upward variance by virtue of the information that was included in the PSR. So in that regard, with the three or four sentences that defense counsel stated on behalf of his client in mitigation, there's nothing from the record that would indicate, and even from the argument that we heard here today, that there could be different evidence presented to the court that would change the sentencing. Obviously, this court is aware that district judges have a wide range of autonomy with respect to imposing sentences, and I think it's unfair to consider this upward variance as a substantial upward variance considering that the top end of the guideline range was 57 months. The court chose to impose the sentence of 72 months, and it's important to note that probation in this confidential recommendation actually recommended 120 months. So there was a bit of a benefit given to the defendant, and I think the court in analyzing its decision to impose sentence considered all the factors, not just the information that was contained in the pre-sentence recommendation from probation. With respect to the third prong of plain error, it appears that the record is absent of any specific details regarding what the court would have done but for this report. It's the government's position that this district court could have reasonably found or sentenced this defendant to 72 months under the same circumstances, even if the court did not consider the justification section of the pre-sentence recommendation. And finally, even if the appellant were to satisfy the first three prongs of plain error review, it's discretionary for this court to remand or vacate sentence for a new sentencing. And I think it's important to consider what would be different if this case was sent back down to the district judge. We still have over 30 pages of criminal history that chronicles at least 30 different incidents with law enforcement, 15 of which warranted a specific criminal history point or more being assessed to this defendant. And we're dealing with someone who's violent, so any language that was used in this recommendation be it inflammatory or not is going to be just a reflection of how inflammatory this criminal defendant's criminal history was. Your honors, it pretty much sums up our argument. We will rest on our brief otherwise. And if there are no further questions, we would ask this court to affirm the sentence of the lower court. Thank you, Terry. Thank you. Judge Owen, you asked recently or you asked a moment ago about what evidence there was of intimidation of witnesses. There was none. There's nothing in the pre-sentence report or in the discovery that indicated direct evidence of that. However, the court said at the time of imposing sentence, as he was imposing sentence, the courts of the opinion that these pages of criminal charges and evidence of intimidation of witnesses. Now, the only place that he could conceivably have gotten evidence of intimidation of witnesses is off that document right there. That's the only place that it was ever mentioned. In the pre-sentence report, it does mention that charges were brought and subsequently dismissed. In fact, one of the set of one of the charges that was brought and dismissed, the witnesses went before an attorney to swear out affidavits that they did not wish to go forward as witnesses. Now, I have no idea what led up to that, but there is an attorney who certainly would not have been part of an intimidation of witnesses who prepared that affidavit and witnessed that affidavit for those witnesses. So there's more to it than is put out on that piece of paper. We further made a claim that there was a violation of the Sixth Amendment right to effective assistance of counsel, and I would like to address that briefly. In order for counsel to be effective, he's got to be informed. He's got to have some idea what the allegations are against his client. By allowing a secret justification section to be provided within a pre-sentence report, counsel is going to be ineffective when it comes to responding to that, no matter how prepared you are and how well, how much you work on the pre-sentence report and the other matters that you are aware of. If secret facts are brought in before the court, you do not have the opportunity to be effective as to them. We submit that for the reasons that we've set forth, that whether it's a de novo standard or a plain error standard, there's error in this sentencing that should be remanded for re-sentencing and prospectively should be informed that a justification section either has to be provided to counsel so that we can review it and rebut it if necessary or left out of the pre-sentence report. Once again, we are not objecting to the matters contained within the simple recommendation. We are objecting to any justification section that brings facts in that were not set out in the pre-sentence report. If no one has any questions, thank you very much for your attention.